**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LEVON MANLEY,                          )
                                       )
                    Plaintiff,         )
                                       )
        vs                             )        Civil Action No. 2:24-1040
                                       )        Magistrate Judge Dodge
JOHN WETZEL, et al.,                   )
                                       )
                    Defendants.        )

## MEMORANDUM OPINION

Plaintiff Levon Manley ("Manley"), a prisoner who is incarcerated in the State Correctional Institution at Fayette, Pennsylvania ("SCI Fayette"), brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 against former Department of Corrections Secretaries John Wetzel and George Little, SCI Fayette Superintendent Eric Armel, Deputy Superintendents Tina Walker and Joseph Trempus and numerous[1] officers at the institution. The Complaint describes multiple incidents occurring between October 13, 2021, when Manley arrived at SCI Fayette, and January 21, 2023. These incidents primarily involved being moved from one cell to another and searches of him and his cell, actions which he alleges were undertaken for retaliatory reasons. He also cites one incident in which he was called a racial slur and occasions on which officers delayed letting him out of his cell.

Manley purports to raise claims under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42

U.S.C. § 1983. He also raises a claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA").

---

[1] The caption of the case names twenty-eight Defendants, but the list of Defendants in the Complaint contains twenty-seven names and the two sets of names are not identical. Some individuals appear in one place but not the other.

Pending before the Court is Defendants' motion to dismiss. For the reasons discussed below, their motion will be granted and the claims will be dismissed with prejudice and without leave to amend because amendment would be futile, except for the First Amendment retaliation claims, which will be dismissed without prejudice and with leave to amend.

## I.    Procedural History

Manley initiated this case by submitting a motion to proceed in forma pauperis. The motion was granted and the Complaint was docketed on October 18, 2024 (ECF No. 7). On January 31, 2025, Defendants moved to dismiss (ECF No. 22), which has been fully briefed (ECF Nos. 23, 34).[2]

## II.    Facts Alleged in Complaint

The Complaint recites many incidents involving various defendants that are alleged to have occurred between 2021 and 2023.

Manley alleges that his property (a box containing his legal documents and a TV antenna) was lost or destroyed during his transfer from SCI Greene to SCI Fayette. On October 13, 2021, he filed grievances alleging that his property was damaged or destroyed by Defendants Tyner, Rankin and Dongili in retaliation for his exercise of freedom of speech. (Compl. ¶¶ 36-54.)

On February 4, 2022, Manley complained to Superintendent Armel about being belatedly released from his cell or not released at all for scheduled recreation time and that COVID protocols were not being followed. Armel told him to report it to Trempus. On February 6, a trainee was non-compliant with COVID protocols and Manley filed a grievance about it. (*Id.* ¶¶ 58-64.)

---

[2] In his response, Manley agrees to withdraw his Fourth and Fourteenth Amendment claims and concedes that he cannot identify the individual involvement of Defendants Little, Trempus and Lacey. (ECF No. 34 at 10, 13, 14.)

Manley alleges that Defendant Sloan found him in possession of pens while in the yard on or about March 16, 2022. He filed grievances alleging he was retaliated against for his exercise of freedom of speech and that Major Hawkinberry told him he could be moved at any time. (*Id.* ¶¶ 65-75.) On or about April 1, 2022, Manley alleges that Defendant Shreve interfered with his attempt to eat his meal before commencing the fast for Ramadan. He filed a grievance alleging that Shreve was persecuting him for exercising freedom of speech and religion. (*Id.* ¶¶ 76-77.)

In mid-April, 2022, Manley complained to Defendant Walker about being moved and she told him to write a request to staff. However, he received no response when he did so. (*Id.* ¶¶ 80-88.) Sloan vigorously patted him down on May 24, and Manley asked for a video of the incident but it was not preserved. (*Id.* ¶¶ 89-90.)

On May 27, 2022, Manley noticed Maloberti and Burnsworth watching him in the shower and they called him a "snitch" for having filed grievances about inmates being charged with rape and molestation. (*Id.* ¶¶ 91-93.) On June 1, Correctional Officer Trainee ("COT") Angelo did not open his cell when he buzzed to be released for law library time and he missed 15 minutes of scheduled time. (*Id.* ¶¶ 94-95.) Maloberti and Galterio[3] failed to stop an inmate fight and OC spray was deployed, causing Manley pain and causing him to miss law library time because the prison was locked down. (*Id.* ¶¶ 96-97.) Maloberti did not let him out of his cell and he missed day room time. (*Id.* ¶¶ 98-99.)  Both events occurred in June 2022.

Corrections Classification Program Manager ("CCPM") Hawkinberry told Muslims (including Manley) on June 17, 2022, that they exceeded the maximum of 55 inmates allowed in the chapel, but Manley observed another group was not held to this limit. When he tried to

---

[3] Galterio is not named as a defendant.

inform CCPM Hawkinberry that the prison schedule was causing Muslims to miss three weeks of services in a row, she threatened to send him to the RHU. (*Id.* ¶¶ 100-05.) On June 24, COT Angelo failed to let Manley out of his cell and there was no "cap" on it. (*Id.* ¶¶ 108-10.) Datiz did the same thing several days later. (*Id.* ¶¶ 111-13.)

On or about July 25, 2022, Manley alleges that he was held in his cell because of an inmate fight and the prison was in lockdown. As a result, he missed his scheduled law library time. He filed grievances based on this incident, for which he alleges he was retaliated against by Defendants Erickson, Hollowood, Harbough and Wood. (*Id.* ¶¶ 114-22.) On or about December 2, 2022, Manley alleges that Brunst opened his door while he was asleep and told SCI Fayette staff that he was asleep. As a result, he did not receive a meal and Brunst intentionally skipped him. (*Id.* ¶¶ 136-38.) He filed grievances for this incident, for which he alleges he was retaliated against by Defendants Brunst, McGowan, Erickson and Armel. (*Id.* ¶¶ 138-41.)

Manley alleges that Defendant Datiz directed a racial slur toward him on or about January 18, 2023, and he filed a grievance. (*Id.* ¶¶ 126-30.) In response to this grievance, Manley alleges he was retaliated against by Defendants Datiz, Erickson, Brunst and McGowan by being moved out of his cell. (*Id.* ¶¶ 126-30.)

As relief, Manley seeks compensatory damages of millions of dollars against assorted groups of defendants, as well as a declaratory judgment that Defendants violated his rights, and injunctions directing Defendants not to use various of methods of retaliating against him, including urinalysis, pat downs, opening his cell door without cause, and moving him throughout the prison. (Compl. at 46-51.)

4

### III.  <u>Standard of Review</u>

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. When dismissing a civil rights case for failure to state a claim, a court typically must allow a plaintiff to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

"A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established.").

## IV.    Discussion

Manley brings his constitutional claims under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Section 1983 does not create substantive rights, but provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, are persons who deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Defendants contend that based on Manley's allegations, they discern eight distinct claims. (ECF No. 23 at 5.) In his response, Manley organizes them into fourteen claims. (ECF No. 34 at 6-7.) No matter how they are organized, however, Manley's claims fall into several categories: First and Fourteenth Amendment retaliation claims; Fourth Amendment claims arising out of searches of his person and cell; Eighth Amendment claims of cruel and unusual punishment that he asserts are based on harassing searches of him and his cell; and a RLUIPA claim based on three distinct incidents that he claims affected his religious practice.

Defendants assert that based on their immunity under the Eleventh Amendment, all claims against them in their official capacities must be dismissed. They also contend that Manley

fails to state a claim for relief under either the First or Eighth Amendments or under RLUIPA.[4]

### A. Eleventh Amendment Immunity

As the Supreme Court has stated, under the Eleventh Amendment, "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429-30 (1997).

In their official capacity, the Corrections Defendants are state agents who are entitled to Eleventh Amendment immunity with respect to damage claims. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (unless sued for injunctive relief, state officials in their official capacities are not "persons" for purposes of § 1983).

The Court of Appeals for the Third Circuit has held that Eleventh Amendment immunity is subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and

---

[4] Defendants also contend that the Complaint "recount[s] the incidents of everyday prison life without any coherent narrative." (ECF No. 23 at 7.) They argue that it should be dismissed for failing to comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). The Complaint consists of 51 pages and 204 numbered paragraphs, which, although lengthy, is not unduly burdensome, and as Defendants acknowledge, addresses several incidents and causes of action. Moreover, Defendants have responded to the Complaint on the merits and the Court is able to resolve their motion on the merits. Therefore, it will not be dismissed under Rule 8.

(3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law, that is, the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed.714 (1908). *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).

None of these exceptions apply here. Section 1983 does not abrogate states' sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979). In addition, Pennsylvania has not waived its Eleventh Amendment immunity to being sued in federal court. 42 Pa. C.S. § 8521(b); *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223, 227 (3d Cir. 2000).

As for the *Ex parte Young* exception, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). As relevant here, Manley requests a declaration that his rights have been violated and injunctive relief that relates to allegations of past conduct. He is not entitled to retroactive injunctive relief regarding events that have already occurred. Moreover, it would be inappropriate and contrary to the purpose of prospective injunctive relief to issue a blanket injunction that permanently bars correctional officials from searching his cell, conducting pat downs, opening his cell door or moving him within a correctional facility, or one that precludes corrections officials from requiring urinalyses. All of these functions fall within the purview of prison officials and would interfere with and potentially impede the operations and security functions of the correctional facility. Thus, the *Ex parte Young* exception does not apply.

Manley argues that the DOC's receipt of federal funding waives the Eleventh Amendment immunity of prisons such as SCI Fayette. He cites *Yeskey v. Commonwealth of Pa.*

*Department of Corr.*, 118 F.3d 168, 171 (3d Cir. 1997), *aff'd*, 524 U.S. 206 (1998). In that case, the Court of Appeals—and subsequently the Supreme Court—held that Title II of the Americans With Disabilities Act (ADA), which prohibits the exclusion of disabled persons from government programs, applies to state prisons. Unlike the ADA, however, § 1983 does not apply to organizations receiving federal funding, only to persons "acting under color of state law." And as explained above, case law clearly rejects the notion that state officials acting in their official capacity are subject to liability under § 1983. *See also Best v. Merakey USA*, 2020 WL 12740398, at *6 (M.D. Pa. Aug. 31, 2020) ("Unlike § 1983 claims, where federal jurisdiction exists only over actions taken by persons under color of state law, the Rehabilitation Act and the ADA's protections extend to activities of organizations receiving federal funding.")

Thus, Defendants are entitled to immunity with respect to all official capacity claims. As a result, these claims will be dismissed with prejudice.

### B.    Fourth and Fourteenth Amendment Claims

Manley asserts a claim under the Fourth Amendment for the searches of his cell and person and seizure of property. As Defendants point out, however, the Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

He also asserts a claim under the Fourteenth Amendment of violation of his right to substantive due process arising out of acts of retaliation for his filing of grievances. However, the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process [of the Fourteenth Amendment]." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Because Manley has asserted a retaliation

claim under the First Amendment, he does not have another claim based on the Fourteenth Amendment arising out of the same set of facts.

Because both claims are insufficient, they will be dismissed.[5] In addition, it would be futile to allow amendment of them, so they will be dismissed with prejudice and without leave to amend.

      C.   <u>First Amendment Claims</u>

          1.   Failure to state a claim

Manley alleges claims of retaliation under the First Amendment. He contends that after he filed grievances, various prison officials retaliated against him by searching his cell and his person for no reason, transferring him to other cells at random and engaging in acts such as delaying responding to his requests to be let out of his cell for scheduled law library time.

A retaliation claim requires allegations that (1) the plaintiff engaged in a constitutionally protected activity; (2) he suffered an adverse action by a state actor that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Since Manley is bringing his retaliation claim under § 1983, he must also plead each defendant's personal involvement in the alleged retaliation. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant can be held liable only for his or her own conduct. *See, e.g.*, *id.*; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional*

---

[5] As noted above, Manley has agreed to withdraw these claims.

*Med.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub. nom. Taylor v. Barkes,* 575 U.S. 822 (2015); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The Corrections Defendants do not dispute that Manley meets the first element of a First Amendment claim. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (filing grievances is conduct protected by the First Amendment). *See also Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (retaliation against prisoner who requested form to file a grievance was similarly prohibited).[6] They contend, however, that because Manley fails to connect his grievances to any alleged retaliation, such as being moved or having his cell searched, he has failed to allege that his protected activities were a substantial or motivating factor in a defendant's decision to take adverse action. They argue that the alleged retaliatory events are, in large measure, routine prison activities and Manley has failed to plead that the individuals who acted knew about his specific grievances.

Inmates have no right to be housed in a particular area of a facility, *Mays v. Kosinski*, 86 A.3d 945, 949 (Pa. Commw. 2014), and cell and prisoner searches are frequent activities within a prison. "Retaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest." *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). *See also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (holding that the relevant question in a retaliation case is not whether the prisoner had a "protected liberty interest in the privileges he was denied, but

---

[6] Defendants have not discussed the second element, but the Court will assume for purposes of this opinion that if repeated harassing searches of his person and his cell occurred as alleged, this would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

whether he was denied those privileges in retaliation for exercising a constitutional right.");

*McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (noting that alleged retaliatory conduct need only be more than *de minimis*); *Dippolito v. United States*, 2015 WL 9308238, at *7 (D.N.J. Dec. 21, 2015) (prisoner who filed grievances and was retaliated against by being improperly denied a bottom bunk stated a claim), *aff'd*, 704 F. App'x 199 (3d Cir. 2017).

Manley alleges throughout the Complaint that the alleged wrongful conduct of various Defendants was retaliatory, but he must do more than assert threadbare allegations that defendants' conduct was because of his grievances or was part of a "pattern of retaliation," since such allegations are mere legal conclusions that do not satisfy the pleading requirements of Rule 8 and do not support the requisite elements of a retaliation claim. The Complaint fails to plausibly plead a First Amendment claim because it does not establish a causal connection between the various grievances Manley asserted against a specific correctional officer or officers and any alleged retaliatory acts by other officers. *See Wilson v. Kerestes*, 2015 WL 631085, at *3 (M.D. Pa. Feb. 12, 2015) (plaintiff alleged that defendants retaliated against him for filing grievances but did not allege that he filed grievances against them.) Thus, the Complaint fails to state a claim upon which relief may be granted. Nor does it specify the personal involvement of each individual Defendant.

In addition, several of the alleged incidents involve insults or verbal threats that were not carried out. See Compl. ¶¶ 45-46 (Tyner and Rankin threatened to use OC spray on him when he refused to sign a receipt because some of his property was missing); ¶¶ 76-77 (Shreve threatened to put him in the RHU for asking about religious pre-dawn meal during Ramadan); ¶¶ 103-04 (CCPM Hawkinberry threatened to send him to the RHU for announcing that under the existing schedule inmates were missing three weeks of services in a row); ¶¶ 126-27 (Datiz called him a

racial slur).

"It is well established that verbal harassment or threats of the sort detailed above will not, without some reinforcing act accompanying them, state a constitutional claim." *Maclean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995) (citations omitted). *See also Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("verbal harassment does not give rise to a constitutional violation enforceable under § 1983.")

### 2.   Applicability of Fed. R. Civ. P. 20

The Complaint does not comply with Rule 20 of the Federal Rules of Civil Procedure. Rule 20(a)(2) permits defendants to be joined in a single action when plaintiff's right to relief arises out of the same transaction, occurrence or series of transactions or occurrences, and there is a question of law or fact common to all defendants. While Federal Rule of Civil Procedure 1 commands that pleadings be liberally construed to do justice with a minimum of delay and expense, neither Rule 1 nor Rule 20 is a license to join unrelated claims and defendants in one lawsuit. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 438 (3d Cir. 2007) (affirming dismissal of a complaint asserting constitutional violations that arose out of different transactions and occurrences and in many instances failed to specify the party that allegedly committed the violation).

Whether a complaint satisfies Rule 20's joinder requirements is a matter for a court to decide within its discretion. *See Hagan v. Rogers*, 570 F.3d 146, 152 (3d Cir. 2009). In this case, Manley has cobbled together a series of unrelated events by claiming that they are all examples of retaliation against him for exercising his First Amendment rights. The problem with this theory is that the actions he cites—cell searches, searches of his person, moving him from one cell to another within the prison—are ordinary incidents of prison life. Plaintiff has failed to

plead any factual basis upon which to base a claim that various subsets of all twenty-eight individuals named in the Complaint participated in these actions because of a desire to retaliate against Manley for grievances filed against other individuals named in the Complaint.

For all of these reasons, Plaintiff has failed to state a claim under the First Amendment and the First Amendment claims against all Defendants will be dismissed.[7]

D.  Eighth Amendment Claim

The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted).

Defendants argue that "prisoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program." *Podhorn v. Grondolsky*, 350 F. App'x 618, 620 (3d Cir. 2009) (citation omitted). Moreover, "the Constitution does not mandate

---

[7] Manley's Complaint includes claims against Defendants Wetzel, Little and Kimmel, all of whom held supervisory positions. Manley has already conceded that he cannot identify any personal involvement by Little. Since he has failed to state a claim against their subordinates, the claims against them fail as well. Even if Manley had stated a claim against any of the other Defendants, however, his claim against these supervisory Defendants would fail. There are only three ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates:  if the supervisor: (1) directed the subordinate to take the action in question; (2) had "knowledge of and acquiesced" in the subordinate's unconstitutional conduct, meaning the supervisor knew that his or her subordinate was violating the plaintiff's rights but failed to stop the subordinate from doing so; or (3) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation. *See, e.g., A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Rode*, 845 F.2d at 1208. Manley has not adequately pleaded that any of these Defendants directed their subordinates to engage in wrongful conduct or maintained a policy, custom or practice which directly caused a constitutional violation. He only provides a bald conclusion, without any supporting facts, that they had knowledge of the grievances and retaliation and acquiesced in their violation of Manley's rights. This is insufficient to plausibly state a claim against them.

comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347.

To prevail against prison officials on a claim that an inmate's conditions of confinement violated the Eighth Amendment, an inmate must meet two requirements: (1) the deprivation alleged must be, objectively, "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Courts have found that "life's basic necessities" include "food, clothing, shelter, medical care, and reasonable safety." *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights. *Wilson* at 302-03.

Defendants argue that being deprived of a meal two times does not rise to the level of an Eighth Amendment violation. *See Ball v. Struthers*, 2012 WL 2946785, at *13 (M.D. Pa. July 19, 2012) ("purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation" (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). *See also Frazier v. Daniels*, 2010 WL 2040763, at *11 (E.D. Pa. May 20, 2010) (being denied a meal one time is not an "adverse action" for purposes of a retaliation claim).

Manley responds that he is not basing his Eighth Amendment claims on two meals being withheld, but on the harassing cell searches to which he was subjected. He contends that the

Supreme Court has held that a prisoner can state a claim under the Eighth Amendment when cell searches rise to the level of being "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).

Nevertheless, courts have recognized this claim only when an inmate points to "numerous searches conducted within a short period of time." *Williams v. Southwoods State Prison*, 2007 WL 1752088, at *3 (D.N.J. June 13, 2007) (three searches within three days, accompanied by disciplinary filings against prisoner, were sufficient to state a claim); *Scher v. Engelke*, 943 F.2d 921, 923-24 (8th Cir. 1991) (ten searches of an inmate's cell within a nineteen-day period constituted "cruel and unusual punishment"); *Blanks v. Smith*, 790 F. Supp. 192, 193–94 (E.D. Wis. 1992) (daily body cavity and cell searches for two weeks).

In this case, Manley contends in his response that he has listed five searches over two years. This is insufficient to state an Eighth Amendment claim. *See Banks v. Beard*, 2006 WL 2192015, at *11 (W.D. Pa. Aug. 1, 2006) ("less than a handful of searches over the period of several months" failed to state a claim.)

Therefore, the Eighth Amendment claim will be dismissed.

E.   RLUIPA Claim

Manley alleges that his religious practice was substantially burdened when Defendants prevented him from having a meal before fasting on Ramadan one time, when he was told to leave the chapel after an interaction with prison staff on another occasion, and when he was prevented from attending services during a lockdown on a third occasion. Defendants move to dismiss this claim as well.

RLUIPA provides that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Thus, "RLUIPA does not permit a court to determine whether the belief or practice in question is 'compelled by, or central to, a system of religious belief.'" *Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007) (citations omitted).

Under RLUIPA, Manley bears the initial burden of proving that the DOC's policy imposes a substantial burden on his religious exercise. *See Holt v. Hobbs*, 574 U.S. 352, 360 (2015). Then the burden shifts to the DOC to show that policy: "(1) [was] in furtherance of a compelling governmental interest; and (2) [was] the least restrictive means of furthering that compelling governmental interest." *Id.* at 362.

"For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d at 280 (footnote omitted).

Manley does not point to any prison "policy" that conflicted with his religious practice.[8] Rather, he cites three unrelated instances during which he was not able to fully engage in his religious exercise because of a specific circumstance that occurred. However, he has not plausibly pleaded that he was substantially burdened in his religious exercise based on the isolated incidents referenced in the Complaint. *See Saunders v. Hill*, 2019 WL 5558961, at *5 (E.D. Pa. Oct. 24, 2019) ("Mr. Saunders has failed to state a plausible claim that Defendants substantially burdened his free exercise rights by preventing him from attending Jumu'ah prayer services on a single isolated date, Friday, August 9, 2019, while his Unit was on lockdown."); *Alamiin v. Miller*, 2010 WL 3603150, at *21 (W.D. Okla. June 28, 2010), *report and recommendation adopted*, 2010 WL 3604660 (W.D. Okla. Sept. 9, 2010) ("Plaintiff here has only shown two instances where Jumu'ah was canceled, and that some aspects of Ramadaan were modified in 2008 due to a lock down. . . . "[N]either of these isolated incidents substantially burdened his religious exercise."); *Jones v. Malin*, 2017 WL 985943, at *3 (S.D.N.Y. Mar. 13, 2017) ("As a matter of law, missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion.") (citation omitted).

Based on the three isolated incidents cited in the Complaint, Manley has not pleaded facts that could support a claim that he was substantially burdened in his religious exercise. Therefore, he has not asserted a claim under RLUIPA, requiring its dismissal.

## V.    **Amendment**

Manley concedes that he cannot identify the individual involvement of Defendants Little, Trempus and Lacey. Therefore, claims against Little, Trempus and Lacey will be dismissed.

---

[8] *See Holt*, 574 U.S. at 356 (prison grooming policy interfered with Muslim inmate's religious exercise of growing a beard); *Washington v. Klem*, 497 F.3d at 274 (DOC policy allowing only ten books in an inmate's cell interfered with inmate's religious practice of reading four different Afro-centric books per day).

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017). In this case, amendment of certain claims would be futile.

Because the Eleventh Amendment immunity bars the claims against Defendants in their official capacity, all such claims should be dismissed with prejudice and without leave to amend.

In addition, Manley cannot state a claim under the Fourth Amendment because it does not apply in prisons and he cannot state a claim for retaliation under the Fourteenth Amendment because he already has a claim under the First Amendment. Further, the allegedly harassing cell and personal searches are insufficient as a matter of law to establish an Eighth Amendment claim and Manley cannot base a RLUIPA claim on three isolated instances during which he was unable to fully exercise his religion because of specific circumstances at the prison. Therefore, all of these claims should be dismissed with prejudice and without leave to amend as well.

As it relates to the First Amendment claims, they will also be dismissed. Because the Court cannot conclude that amendment would be futile, however, the First Amendment claims will be dismissed without prejudice and with leave to amend. An Amended Complaint must comply with Federal Rule of Civil Procedure 8, which requires, among other things, that a complaint assert a short and plain statement of the claim. Any amendment must also comply with Rule 20, which limits the joinder of defendants in one action to circumstances in which the claim arises out of the same transaction, occurrence or series of transactions or occurrences. As discussed in this opinion, the Complaint filed by Manley does not comply with Rule 20 as it relies on unrelated occurrences involving many defendants.

**VI.**  **<u>Conclusion</u>**

For these reasons, Defendants' Motion to Dismiss (ECF No. 22) will be granted and Plaintiff's claims will be dismissed.

An appropriate order follows.


Dated: July 24, 2025                                   s/Patricia L. Dodge
                                                                      PATRICIA L. DODGE
                                                                      UNITED STATES MAGISTRATE JUDGE


cc:      LEVON MANLEY
         HN-8396
         SCI FAYETTE
         50 Overlook Drive
         LaBelle, PA 15450